## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**ANTHONY HUDSON**                                    **PLAINTIFF**

**V.**                        **NO. 3:22-CV-00153-JTK**

**SOCIAL SECURITY ADMINISRATION**                **DEFENDANT**

## ORDER

I.   **Introduction**:

Plaintiff, Anthony Hudson ("Hudson"), applied for disability benefits on January 30, 2020. (Tr. at 15). On the same day, he applied for supplemental security income. *Id.* In the applications, Hudson alleged disability beginning on November 14, 2019. *Id*. The claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Hudson's applications on July 13, 2021. (Tr. at 20-30). The Appeals Council denied his request for review on May 18, 2022. (Tr. at 1-7). The ALJ's decision now stands as the final decision of the Commissioner, and Hudson has requested judicial review.

For the reasons stated below, the Court[1] reverses the ALJ's decision and remands for further review.

II.   **The Commissioner's Decision**:

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

The ALJ found that Hudson had not engaged in substantial gainful activity since the alleged onset date of November 14, 2019.[2] (Tr. at 17). At Step Two, the ALJ found that Hudson had the following severe impairments: chronic liver disease, depression, and neurodevelopmental disorder. (Tr. at 18).

At Step Three, the ALJ determined that Hudson's impairments did not meet or equal a listed impairment. (Tr. at 18-19). Before proceeding to Step Four, the ALJ determined that Hudson had the residual functional capacity ("RFC") to perform work at the light exertional level, with some additional limitations: (1) he can perform work where the interpersonal contact is limited, defined as interpersonal contact requiring a restricted degree of interaction, for example: answering simple questions, responding appropriately to supervisors and co-workers; (2) interaction with the public is infrequent and not considered to be an essential job duty; (3) the complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables and little judgment; and (4) supervision required is simple, direct, and concrete. (Tr. at 19-20).

---

[2] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

At Step Four, the ALJ determined that Hudson is capable of performing past relevant work as Grader, Dressed Poultry, an SVP 3 job. At Step Five, the ALJ relied upon testimony from a Vocational Expert ("VE")to find that, based on Hudson's age, education, work experience and RFC, he could perform work in the national economy. (Tr. at 24-25). Therefore, the ALJ concluded that Hudson was not disabled. *Id.*

## III.   Discussion:

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

3

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Hudson's Arguments on Appeal

Hudson contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that the ALJ did not properly evaluate the medical opinions, that the ALJ erred at Step Three, and that the Appeals Council should have considered evidence submitted after the ALJ's decision.

Hudson alleges that he met Listing 12.05B for intellectual disability. For that Listing, a claimant must show:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence;

4

or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.[3]

---

[3] The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*.

Defendant admits that Hudson *did* meet the first prong of 12.05B, because he had a full-scale IQ of 70, based on intelligence testing administered in August 2021. (Tr. at 8-9, Doc. No. 17 at 7). Defendant urges that Hudson did not have the marked or extreme limitations required in part two of the Listing.

Actually, Hudson arguably met the requirements of subsection two. He was diagnosed with a Special Learning Disability in 2018, he was placed in special education classes, and he consistently tested as performing below grade level in school. (Tr. at 70, 378-383). During a school assessment in 2006, when Hudson was 7 years old, he tested in the poor range for social engagement, and the very poor range regarding independent functioning, language development, and self-direction. (Tr. at 60, 369-373). The Administration's own consultative psychiatric examiner, Kenneth Jones, Ph.D., found that Hudson presented with "obvious lower intellectual functioning," and was functioning in the borderline range cognitively. (Tr. at 18-19, 493-498).

Hudson testified that he could not tend to his personal hygiene, and that he could not keep up mentally with the work he had performed at the poultry plant. (Tr. at 37-43). He said he does not drive, shop, or pay bills, but can perform some chores. *Id*. He said he had trouble following directions and that he handles stress poorly. *Id*. In fact, he was placed in inpatient psychiatric care in 2008, for attempted suicide.

(Tr. at 454-459).

The ALJ did not mention Listing 12.05B in his Listings discussion. (Tr. at 19-20). He did not address any intellectual disability at all at Step Three. Whether or not Hudson met this Listing is not for this Court to decide, but he ALJ erred by failing to even consider it. See *Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 at *11-12 (E.D. Mo. Jan. 14, 2019) (an ALJ must "show his work" to allow meaningful judicial review).

## IV.  <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred at Step Three. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 11th day of May, 2023.

_____
UNITED STATES MAGISTRATE JUDGE